"Plaintiff sues under 28 U.S.C. § 1498, alleging that the United States infringed his Patent No. 3,433,437, issued in March 1969. Plaintiff also sues under 28 U.S.C. § 1491 and 22 U.S.C. § 2356(a), asserting that (1) the United States impliedly contracted to compensate him for use of his invention without his consent and (2) the United States improperly disclosed confidential information involving the subject matter of the patent. In response to plaintiffs petition, defendant moves for summary judgment in its favor.
"During the mid-1960’s, plaintiff developed a remedy for certain problems affecting pyrophoric frangible projectiles. In 1966, plaintiff demonstrated his invention for the United States Army and allegedly disclosed to the Department confidential information about projectile manufacture. When the Army, later that year, issued a solicitation for these kinds of projectiles, plaintiffs company bid on the contract. Despite plaintiffs status as the lowest bidder, Northrop Corporation received the award. Plaintiff filed a bid protest with the General Accounting Office which was subsequently denied.
"In January 1967, plaintiff filed a patent application for his invention and his patent was issued on March 18, 1969. On April 9, 1969 (22 days after his patent had been issued), plaintiff wrote to the Army requesting an investigation of *833 infringement by the Department. Plaintiff now asserts that this request initiated his claim for administrative relief for unauthorized use of his patented invention. The Army denied his claim in October 1970. Plaintiff says that letters between his counsel and the Army during 1969-1972 demonstrated his intent to pursue his claim. A March 1976 letter from plaintiff to the Army formally reopened his request for an administrative settlement — the Army denied reconsideration of the claim in September 1976. In February 1977, plaintiff filed this suit, asserting that he had finally exhausted his administrative remedies.
"Upon review of the parties’ submissions, and without oral argument, we find that summary judgment is inappropriate and remand to the Trial Division for further proceedings, including the following issues:
"1. The Government’s first defense to the suit is that only a patent owner may sue under § 1498 and that Bates, plaintiff here, is not the owner of the patent. In 1968, Bates assigned to John E. Reilly (Bates’ attorney in this action) 'his entire right, title and interest in and to the aforesaid applications for patent for Rocket Projectile and Rocket Launcher for the territory of the United States of America and for all foreign countries . . .’ Plaintiff now contends that the 1968 assignment was made only as a security interest and that Bates and Reilly, at the time of the assignment, intended that Bates would retain the right to sue for infringement. Plaintiff offers as evidence of this intent a 1976 agreement between Bates and Reilly reaffirming their earlier understanding. And while the 1968 assignment itself does not expressly reserve litigation rights in Bates (clause 4 delivers to Reilly, the assignee, Bates’ "entire right, title and interest”), clauses 5 and 6 can be read to bolster plaintiffs contention that the agreement was merely made to create a security interest and did not intend to deprive Bates of a patent owner’s usual prerogatives. Defendant argues, however, that the 1976 'reaffirmation’ should not be used to vary the supposedly clear assignment of rights in the 1968 agreement and it offers in support of its position the fact that the 1968 agreement was recorded with the Patent Office and Reilly became the record owner of the patent on March 18, 1969.
*834 "We believe that additional information is needed to determine the intent of the parties to, and the meaning of, the 1968 agreement. These findings in turn will determine who owns the patent for purposes of an infringement suit in this court. We also direct the trial judge to find whether, if Reilly is found to be the patent’s owner, Bates nonetheless has an interest in the patent sufficient for this infringement suit. The findings on this issue will help the court to decide whether to dismiss Bates’ petition and permit Reilly to sue in his own name or join Reilly in the Bates’ petition and allow Reilly and Bates to pursue any claims either may have against defendant. Cf., Independent Wireless Co. v. Radio Corp., 269 U.S. 459 (1926); Nartron Corp. v. United States, ante at 780; Pratt & Whitney Co. v. United States, 139 Ct. Cl. 540, 153 F. Supp. 409 (1957) (cases concerning joinder of patent owner in suit by licensees); see also Cooper-MacDonald, Inc. v. United States, ante at 481, 489-90.
"2. It is also necessary that there be further inquiry on the defense of limitations raised by the Government to Bates’ unauthorized disclosure claim. Defendant contends that the last date on which the disclosure cause of action could have arisen was March 18, 1968, when the patent was issued and the information contained in it became public. Defendant says that because this petition was filed in February 1977, plaintiffs claim is untimely. However, we believe that plaintiffs assertion that he disclosed to the Government information beyond the scope of the patent warrants further investigation. If it is found that Bates disclosed such additional information meriting trade secret protection and the Government in turn improperly disclosed the information to manufacturers, issuance of the patent would not bar recovery.
"Defendant also contends that even if the disclosed information was beyond the scope of the patent, plaintiff is nonetheless barred by the statute of limitations. The Government argues that the adverse decision of the Comptroller General in 1967 triggered plaintiffs duty to file suit in this court and Bates’ almost 10-year delay is fatal. In support of this argument, the Government cites Johnson v. United States, 208 Ct. Cl. 409, 527 F.2d 1209 *835 (1975), cert. denied, 429 U.S. 889 (1976). In Johnson, the court held that the six-year period began to run when that plaintiff received final adverse action from a statutory agency board reviewing an unauthorized disclosure-and-use claim. Defendant here would have us draw an analogy to Johnson and hold that the GAO bid protest decision should have the same effect as the Johnson board decision. We are unwilling to do so, however, because we do not find that as much finality should be given to the GAO decision focusing on the bid protest as we gave to the decision of a statutorily-created review board with the specific function of considering disclosure claims and compensating those applicants whose information had been used by the Government. In Johnson, plaintiff voluntarily pursued an administrative remedy that he should have known would result in a final adjudication of the specific question presented, i.e., did the Government use plaintiffs information so that he deserved compensation for his contribution. In the case at bar, we are unwilling to assume that plaintiff should have known that the GAO bid protest decision, although it covered his claim that information was improperly disclosed by the Government, was the point at which his administrative remedies for unauthorized disclosure had been exhausted. Plaintiff continued to pursue his claim with the Department of the Army and the Army denied his claim in October 1970, and denied reconsideration in September 1976. For this reason, we do not foreclose plaintiffs claim at this point, especially as it is possible that the trial judge’s findings regarding the disclosure and use of plaintiffs proprietary information may demonstrate that plaintiff has the kind of disclosure claim properly raised under a continuing tort or continuing claim theory. See, Johnson, supra at 412; cf., Calhoun v. United States, 173 Ct. Cl. 893, 354 F.2d 337 (1965) (a patent infringement case). However, aside from the points indicated above, we do not decide, one way or the other, whether limitations has run on plaintiffs disclosure claim.
"it is therefore ordered that defendant’s motion for summary judgment is denied, and the case is remanded to *836 the Trial Division for further proceedings consistent with this order.”